IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PROSPECT FUNDING HOLDINGS (NY), LLC,<br><br>        Plaintiff and<br>        Counter-defendant,<br><br>vs.<br><br>RONALD J. PALAGI, P.C., L.L.C., and CHE STUBBLEFIELD,<br><br>        Defendants and<br>        Counterclaimants. | 8:18-CV-15<br><br>MEMORANDUM AND ORDER |

The plaintiff, Prospect Funding Holdings (NY), LLC, seeks confirmation of two arbitration awards pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. Filing 1. The defendants, Ronald J. Palagi, P.C., L.L.C. ("RJP")[1] and Che Stubblefield, oppose confirmation of the awards. Filing 11. The defendants also seek to delay confirmation of the awards pending discovery. Filing 21. And the defendants move to dismiss the case for lack of subject-matter jurisdiction. Filing 29. The Court will deny the motion to dismiss, but grant the motion for discovery.

BACKGROUND

Stubblefield is being represented by RJP in a lawsuit against General Parts and other defendants in Douglas County District Court that is, so far as the Court is aware, still ongoing. Filing 22 at 15. On January 27, 2016,

---

[1] For the sake of clarity, to distinguish between Ronald J. Palagi and his eponymous law firm, the Court will refer to the firm as "RJP" and Palagi himself by name.

Stubblefield and Prospect Funding entered into a "Sale and Repurchase Agreement" pursuant to which Prospect Funding agreed to purchase a share of Stubblefield's claims in the General Parts case. Filing 2-2.

The Agreement provided for an initial payment to Stubblefield of $5,000, in exchange for which Prospect Funding received a share of Stubblefield's claim in the amount of $23,120. Filing 2-2 at 1. The Agreement also provided for up to seven monthly "additional purchases" in which Stubblefield would receive another $3,000 each month in exchange for an additional $12,036 share of Stubblefield's claims. Filing 2-2 at 1. The Agreement provided that the "maximum amount of Additional Prospect Ownership Amount will be $84,252 with a total purchase price of $24,780." Filing 2-2 at 1 (emphasis omitted). Accordingly, if all the additional purchases had been made, Stubblefield would have received $26,000 in exchange for a $107,372 interest in his claims. Filing 2-2 at 13.

The Agreement provided that if Stubblefield received nothing on his claims in the General Parts case, then he would owe Prospect Funding nothing. Filing 2-2 at 1. If he recovered on his claims, he would receive nothing until Prospect Funding had received its ownership amount, but his obligation to pay Prospect Funding was limited to amounts he recovered. Filing 2-2 at 1, 4. The Agreement provided, however, that if Stubblefield did not comply with the Agreement or attempted to avoid paying Prospect Funding, he would be liable for liquidated damages of twice the amount of Prospect Funding's ownership amount in his claims, regardless of the outcome of the underlying case. Filing 2-2 at 1, 5.

And the Agreement contained an arbitration clause. Filing 2-2 at 1, 6-7. Specifically, the Agreement provided in relevant part that "the Federal Arbitration Act ('FAA') applies to this agreement and arbitration provision"

and that the parties agreed that "the FAA's provisions—not state law—govern all questions of whether a dispute is subject to arbitration." Filing 2-2 at 7 (emphasis omitted). The parties further agreed that

> any dispute or disagreement between these parties arising under this agreement or otherwise of any nature whatsoever including, but not limited to, those sounding in constitutional, statutory, or common law theories as to the performance of any obligations, the satisfaction of any rights, and/or the enforceability hereof, shall be resolved through demand by any party and/or interested party to arbitrate the dispute in New York in and under the laws of' the State of New York and [they] shall submit the same to a neutral arbitration association for resolution pursuant to its single arbitrator, expedited rules.

Filing 2-2 at 7 (emphasis omitted). The arbitrator's decision would be "final and binding in all respects" and "non-appealable[,]" and any person could "have a court of competent jurisdiction confirm the arbitration award as a judgment of such court and enter into its record the findings of such arbitrators for all purposes, including for the enforcement of the award." Filing 2-2 at 7 (emphasis omitted).

Stubblefield also signed a "Irrevocable Letter of Direction," addressed to Palagi, directing Palagi to pay Prospect Funding from any settlement proceeds. Filing 2-2 at 9. Palagi signed the "Attorney Acknowledgement" at the end of the letter, acknowledging the arbitration clause and agreeing to honor the letter. Filing 2-2 at 10.

Prospect Funding asserts that Stubblefield received a settlement in the General Parts litigation and refused to pay Prospect Funding.² Filing 2-1 at 2. According to Mark Larsen, in-house counsel for Prospect Funding, Palagi said he didn't believe the Agreement was enforceable. Filing 26-1 at 1. So, on March 20, 2017, Prospect Funding initiated separate arbitration claims against Stubblefield and RJP. Filing 2-3; filing 2-4. Palagi and Stubblefield both aver, however, that they received no notice of the arbitration proceeding. Filing 11-1 at 1; filing 22 at 15; filing 22 at 18. On April 25, an arbitration award against RJP in the amount of $190,672 was entered by an arbitrator with Arbitration Resolution Services, Inc. (ARS). Filing 2-5. No one appeared on RJP's behalf. Filing 2-5. The award explained:

> The arbitrator finds a valid contract in the Sale and Repurchase Agreement between Prospect Funding Holdings LLC and Che Stubblefield including an Irrevocable Letter of Direction acknowledged by Attorney Ronald J. Palagi dated January 27, 2016. Arbitrator finds jurisdiction over this matter as set forth in said documents and as agreed to by the parties. The plaintiff has purchased an interest in the case settlement proceeds in the sum of $95,336.00. There is a breach of said contract in that Attorney Palagi has failed to advise the Plaintiff of the status of said case and failed in the attorney's fiduciary duty to pay the Plaintiff from said settlement proceeds as set forth in the Agreement. Attorrney [sic] Palagi has admitted failure to pay and has failed

---

² Palagi denies this. Filing 22 at 15. Palagi admits that one defendant has been released in exchange for a "nuisance payment" but says that didn't happen until several months after Prospect Funding commenced arbitration. Filing 22 at 16.

to respond to said complaint. Therefore, the Arbitrator finds for the Plaintiff, Prospect Funding Holdings, LLC the full contract amount of $95,336.00 plus liquidated damages of twice the amount as set forth in the contract for a judgement of $190,672.00 plus costs and expenses.

Filing 2-5. A similar award as to Stubblefield was entered on August 8. Filing 2-7. Notice of the arbitration awards appears to have been provided to Palagi and Stubblefield, respectively, by email from ARS soon after each award was entered. Filing 2-6; filing 2-7.

Prospect Funding filed the present petition to confirm the arbitration awards on January 1, 2018. Filing 1. The defendants, both represented by Palagi and RJP, answered on February 20. The answer contained a cross-petition to vacate the arbitration awards, but did not articulate an excuse for not moving to vacate the awards within three months after they were filed or delivered. Filing 11 at 3-4; *see* 9 U.S.C. § 12. The Court entered an order (filing 13) establishing a schedule for submission of briefing and evidence and directing the defendants to file "[a]ny request to vacate the arbitration award pursuant to 9 U.S.C. § 10 . . . as a separate motion[.]" Filing 13 at 2.

After a short deadline extension (filing 15), the defendants filed their brief opposing confirmation of the awards. Filing 22. They did not file a motion to vacate the awards before the deadline established for such a motion. *See* filing 15. At the same time, the defendants moved to delay ruling on confirmation of the awards until the defendants could conduct discovery. Filing 21. Prospect Funding filed a brief (filing 25) opposing that motion and a reply brief (filing 26) supporting confirmation of the awards. Then, with no explanation, the defendants filed an unauthorized surreply brief opposing

confirmation of the awards. Filing 30. And they filed a separate motion to dismiss asserting a purported jurisdictional defect. Filing 29.

## STANDARD OF REVIEW

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges whether the court has subject matter jurisdiction.[3] The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010). Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008). A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack'" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered. *Branson Label,* 793 F.3d at 914. Thus, the nonmoving party would not enjoy the benefit of the allegations in its pleadings being accepted

---

[3] Although the defendants' motion (filing 29) invokes Rule 12(b)(2), the substance of the motion questions whether Prospect Funding's claim satisfies the amount-in-controversy requirement of 28 U.S.C. § 1332—which clearly raises a question of *subject-matter jurisdiction* implicating Rule 12(b)(1). *See Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002). The Court also acknowledges that the defendants have filed a Rule 12(b) motion *after* filing a responsive pleading, contrary to the terms of that rule. But the Court will consider the motion anyway, because a litigant may generally raise a court's lack of subject-matter jurisdiction at any time. *Kontrick v. Ryan*, 540 U.S. 443, 444 (2004).

as true by the reviewing court. *Id*. But factual challenges do not arise only when a court considers matters outside the pleadings. *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002). A district court engages in a factual review when it inquires into and resolves factual disputes. *Id*. The defendants have asked the Court to do so here, raising a factual attack. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

## DISCUSSION

Before addressing the parties' arguments, the Court will digress on a matter of procedure. As described above, instead of filing a reply brief in support of their motion to delay ruling, the defendants filed what is clearly an unauthorized surreply brief in opposition to the arbitration awards. Filing 30. That brief, filed without leave, was not authorized by the Court's order on briefing, this Court's local rules, or the Federal Rules of Civil Procedure. *See* filing 13; NECivR 7.1(c). Accordingly, filing 30 is stricken.

### SUBJECT-MATTER JURISDICTION

The defendants question the Court's subject matter jurisdiction because, they say, the amount in controversy required for diversity jurisdiction is not satisfied. *See* filing 29-1. That argument is without merit. It is true that the FAA itself confers no federal jurisdiction, but instead requires a separate jurisdictional basis. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008); *CMH Homes, Inc. v. Goodner*, 729 F.3d 832, 835 (8th Cir. 2013). And diversity jurisdiction, pursuant to § 1332, is such a basis. *CMH Homes*, 729 F.3d at 835.

In assessing the amount in controversy in the context of a petition to confirm an arbitration award, the Court "looks through" the arbitration petition to determine whether the case meets the threshold for federal

diversity jurisdiction. *Id.* at 837-38. The defendants argue, based on Nebraska law, that Prospect Funding is owed less than $30,000. Filing 29-1 at 2. But that conflates the merits of Prospect Funding's claim with the amount it is claiming.

The amount-in-controversy allegation of a plaintiff invoking federal-court jurisdiction is accepted if made in good faith. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014). The complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount. *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 995 (8th Cir. 2017). But the legal certainty standard is met only where the legal impossibility of recovery is so certain as virtually to negate the plaintiff's good faith in asserting the claim. *Id.*

Here, Prospect Funding appears with two arbitration awards in hand, each of which is for substantially more than the jurisdictional amount. It is hardly a legal impossibility that it can recover at least that amount. *See id.* Accordingly, the Court has jurisdiction over this case, and will deny the defendants' motion to dismiss.

## MOTION TO DELAY

The defendants also seek to delay confirmation of the arbitration awards to permit discovery. The Court will grant that motion, but explaining why—and explaining the scope of discovery that will be permitted—requires examining the defendants' substantive arguments in more detail.

The defendants advance several arguments that, they say, preclude enforcement of the awards. But the Court's scope of review is narrow. The FAA establishes a liberal federal policy favoring arbitration agreements. *Epic Sys. Corp. v. Lewis*, No. 16-285, slip op. at 5 (U.S. May 21, 2018). So, the Court is required to rigorously enforce arbitration agreements according to

their terms. *Id.* The Court must accord an extraordinary level of deference to the underlying awards. *SBC Advanced Sols., Inc. v. Commc'n Workers of Am., Dist. 6*, 794 F.3d 1020, 1027 (8th Cir. 2015).

The defendants' primary argument is that the underlying Agreement is unconscionable. Filing 22 at 7-10. And, they contend, the factual basis for the arbitration awards is wrong: they say the General Parts suit wasn't settled before the arbitration. Filing 11-1 at 2; filing 22 at 2. But while those arguments could have been presented to the arbitrator, they aren't a basis for refusing to enforce the awards. Courts have no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors or a misinterpretation of the underlying contract. *Med. Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 488 (8th Cir. 2010). The Court must confirm the arbitrator's award even if it is convinced that the arbitrator committed serious error, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his or her authority. *See id.*; *see also SBC Advanced Sols.*, 794 F.3d at 1027. An award may not be set aside because the Court might have interpreted the agreement differently or because the arbitrator erred in interpreting the law or determining the facts. *SBC Advanced Sols.*, 794 F.3d at 1027.

It is true that the savings clause of the FAA, § 2, permits arbitration agreements to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *Epic Sys.*, slip op. at 7. But that refers to the alleged unconscionability of the *arbitration clause* specifically, not to the agreement as a whole. *See id.*; *Cicle v. Chase Bank USA*, 583 F.3d 549, 553-54 (8th Cir. 2009). As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). So, "unless the

challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445-46. Because the defendants "challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." *Id.* at 446.

But some of the defendants' other arguments carry more weight—or, at least, enough weight to warrant some discovery. To begin with, the defendants contend that they didn't get notice of the arbitration proceedings. Filing 11-1 at 1; filing 22 at 3. And Prospect Funding has presented neither evidence nor argument to contradict them. As a general matter, "[w]ithout question due notice should be given to the parties, of the time and place for hearing the cause, and if the award was made without such notice, it ought, upon the plainest principles of justice, to be set aside." *Lutz v. Linthicum*, 33 U.S. 165, 178-79 (1834). All parties in an arbitration proceeding are entitled to notice and an opportunity to be heard. *21st Fin. Servs., LLC v. Manchester Fin. Bank*, 747 F.3d 331, 337 (5th Cir. 2014).

But the procedural vehicle for presenting that contention to the Court is less clear. It could be that the arbitrator committed misconduct, if the arbitrator was required to provide notice to the parties and failed to do so. *Cf.* *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332-33 (7th Cir. 1995). Alternatively, an arbitration award may be overturned where it is completely irrational—that is, where it fails to draw its essence from the agreement, *see* *SBC Advanced Sols.*, 794 F.3d at 1027,[4] and it has been held that an

---

[4] The Court notes that in *Med. Shoppe Int'l*, the Eighth Circuit held that the Supreme Court's 2008 decision in *Hall Street* abrogated that ground for vacating an arbitration award. 614 F.3d at 489. But the Supreme Court subsequently held that an arbitrator acts

arbitration award failed to draw its essence from the underlying agreement where the award had been made without notice being given as required by the agreement, *Choice Hotels Int'l, Inc. v. SM Prop. Mgmt., LLC*, 519 F.3d 200, 208 (4th Cir. 2008).

And that presents a different question that the Court cannot answer on the present record: What notice rules were applicable to these arbitration proceedings? There are several options. The arbitration clause itself provides for arbitration "in New York and under the laws of the state of New York" and pursuant to the chosen arbitration association's "single arbitrator, expedited rules." Filing 2-2 at 7 (emphasis omitted). So, ARS's own rules might have applied, *see Gingiss Int'l*, 58 F.3d at 332-33, but they aren't before the Court. If New York's arbitration rules were applicable, they required the arbitrator to provide written notice to the parties, personally or by registered or certified mail. *See* N.Y. C.P.L.R. 7506(b). And the Agreement itself provides that "[a]ll notices and communications given or made pursuant to" the Agreement "shall be in writing" to be "delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier[.]" Filing 2-2 at 6. That all-encompassing language might control notice of arbitration as well. *See Choice Hotels*, 519 F.3d at 200; *but see Gingiss Int'l*, 58 F.3d at 333.

---

"outside the scope of his [or her] contractually delegated authority" by "issuing an award that simply reflects his [or her] own notions of economic justice rather than drawing its essence from the contract[.]" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (cleaned up). And the Eighth Circuit has considered whether an award was drawn from "the essence of the agreement" since then. *E.g. SBC Advanced Sols.*, 794 F.3d at 1027.

So, the Court will permit the defendants to conduct discovery focused on whether effective notice of the arbitration proceeding was provided.[5]

The defendants also allege that the Agreement violates public policy. Filing 11 at 2-3. An arbitration award can be trumped by a "well defined and dominant public policy arising from laws and legal precedents." *Entergy Operations, Inc. v. United Gov't Sec. Officers of Am. Int'l Union*, 856 F.3d 561, 564 (8th Cir. 2017) (quotations omitted). And the defendants' public policy argument may have some force, because Nebraska public policy is clearly expressed by the Nonrecourse Civil Litigation Act, Neb. Rev. Stat. § 25-3301 *et seq.*, which might be applicable. RJP also contends that it is not subject to an arbitration award because it was not a party to the Agreement. Filing 22 at 10-12. That has some force as well: arbitration is contractual by nature, and a party cannot be required to submit to arbitration any dispute he has not agreed to submit—so, while federal policy favors arbitration agreements, those agreements cannot be construed to encompass claims and parties not intended by the original contract. *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *see Simmons Foods, Inc. v. H. Mahmood J. Al-Bunnia & Sons Co.*, 634 F.3d 466, 468-69 (8th Cir. 2011).

But that all implicates another problem—under the FAA, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." § 12. A party who fails to comply with the statutory precondition of timely service of notice forfeits the right to judicial review of the award. *Piccolo v. Dain, Kalman & Quail, Inc.*, 641 F.2d 598, 600 (8th Cir. 1981). The Court, in fact, lacks jurisdiction to modify or vacate the award in that

---

[5] And, no doubt, Prospect Funding will be interested in conducting discovery on whether the defendants had *actual* notice of the arbitration. *See 21st Fin Servs.*, 747 F.3d at 337-38.

situation. *See id.*; *see also RGA Reinsurance Co. v. Ulico Cas. Co.*, 355 F.3d 1136, 1139 (8th Cir. 2004). And failure to file a timely motion to vacate waives any defenses to confirmation that might have been asserted in the motion. *Val-U Constr. Co. of S.D. v. Rosebud Sioux Tribe*, 146 F.3d 573, 579 (8th Cir. 1998); *Sanders-Midwest, Inc. v. Midwest Pipe Fabricators, Inc.*, 857 F.2d 1235, 1237-38 (8th Cir. 1988).

Here, even if the "Cross-Petition to Vacate Arbitration Award" contained in the defendants' answer is construed as satisfying § 12,[6] it was served far more than 3 months after the emails upon which Prospect Funding relies as notice of the arbitration awards. *See* filing 2-6; filing 2-8; filing 11 at 3-4. But that, too, raises other issues. To begin with, § 12's 3-month filing period begins when the award is "filed or delivered," but "[s]urprisingly, few decisions have directly addressed what it means for an award to be 'delivered.'" *Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 572 (7th Cir. 2007). The most likely place to find an answer is in the rules for the arbitration. *See id.*; *Domnarski v. UBS Fin. Servs., Inc.*, 919 F. Supp. 2d 183, 186 (D. Mass. 2013). But as explained above, the Court doesn't know what the rules for this arbitration were—and, therefore, doesn't know whether the emails relied on by Prospect Funding were sufficient. So, that's another point on which discovery is appropriate.

There is a separate question whether all of the arguments the defendants advance are subject to waiver under § 12. There is at least some

---

[6] The Court has not forgotten that the defendants, despite being directed to do so, have not filed their request to vacate the arbitration awards as a separate motion. *See* filing 13 at 3. But while the Court may well decide to impose consequences on the defendants for ignoring the Court's instructions, that failure would not have *jurisdictional* implications if the initial presentation of the issues in the answer was timely.

authority suggesting that an argument questioning the enforceability of the award, as opposed to the validity of the award—for example, an argument that the award is unenforceable as against public policy—is not raised under § 10 and is, therefore, not subject to § 12. *See Int'l Union, United Mine Workers of Am. v. Monongalia Cty. Coal Co.*, 240 F. Supp. 3d 466, 472-73 (N.D. W. Va. 2017); *cf. Seacoast Motors v. Salisbury, Inc. v. DaimlerChrysler Motors Corp.*, 271 F.3d 6, 8-9 (1st Cir. 2001); *but see Inversiones Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GMBH*, No. 16-24275-Civ, 2017 WL 1737648, at *7 (S.D. Fla. May 2, 2017); *Demartini v. Johns*, No. 12-cv-3929, 2015 WL 12781178, at *11 (N.D. Cal. January 22, 2015); *Abbott v. Mulligan*, No. 2:06-cv-593, 2010 WL 2375944, at *2 (D. Utah June 7, 2010); *White v. Local 46 Metallic Lathers Union & Reinforcing Iron Workers of New York City*, No. 01-Civ-8277, 2003 WL 470337, at *4 (S.D.N.Y. Feb 24, 2003).

Additionally, RJP has a colorable argument it was not a party to the Agreement—and, therefore, to the arbitration clause. It has been held that

> as a general matter, section 12, as well as section 2 and the other enforcement provisions of the FAA, do not come into play unless there is a written agreement to arbitrate. Thus, if there is no such agreement, the actions of the arbitrator have no legal validity. It follows that one is not required to mount a collateral challenge to such an ineffectual action, for if the agreement to arbitrate does not exist, there is no obligation to arbitrate—and a noncontracting person's failure to appear at the arbitration hearing does not create such an obligation.

*MCI Telecomms. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 430-31 (1st Cir. 1998); *accord Haberer Foods Int'l, Inc. v. Goya de Puerto Rico, Inc.*, Civ. No. 17-80, 2017 WL 4041147, at *4 (D. Minn. Sept. 13, 2017).

Of course, there are circumstances under which a signatory to an arbitration agreement may bind a non-signatory to the agreement—but, the signatory must establish at least one of these five theories: incorporation by reference, assumption, agency, veil-piercing/alter ego, or estoppel. *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012) (citing *Thomson-CSF*, 64 F.3d at 776); *see Simmons Foods*, 634 F.3d at 469. But neither party has presented the Court with evidence relevant to those theories.[7] So that too is as issue on which discovery should be conducted.

Finally, the defendants also point out that Prospect Funding is, they say, not registered to do business in Nebraska.[8] Filing 11 at 4. If true, that could actually be a problem for Prospect Funding, because the Nebraska Uniform Limited Liability Company Act, Neb. Rev. Stat. § 21-101 *et seq.*,

---

[7] Prospect Funding does point out, in response to RJP's argument that there was no contractual relationship between RJP and Prospect Funding, that "the award against [RJP] was based upon a breach of contract <u>and</u> a breach of fiduciary duty." Filing 26 at 5 n.1. Breach of fiduciary duty is a tort claim. *Getzschman v. Miller Chem. Co.*, 443 N.W.2d 260, 269-70 (Neb. 1989). But it's not clear to the Court why that matters—RJP isn't subject to arbitration under *any* theory of recovery unless it's bound by an arbitration clause, and only the contract can do that. *See Simmons Foods*, 634 F.3d at 469.

[8] The Court acknowledges that the defendants also asserted other grounds for vacating the award—essentially, just reciting § 10(a). *See* filing 11 at 4. The defendants' § 10 boilerplate is, in the Court's view, insufficient to raise those defenses in the absence of any facts or evidence to support them—particularly when the defendants also admit they "are without any information as to what occurred at arbitration nor what evidence the arbitrator's decision was on." Filing 21 at 2. So, the Court focuses on their *specific* allegations.

provides that "[a] foreign limited liability company transacting business in this state may not maintain an action or proceeding in this state unless it has a certificate of authority to transact business in this state." § 21-162. And because this case is brought under the Court's diversity jurisdiction, it is, for these purposes, in effect only another court of Nebraska. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949); *see also Weeks Constr., Inc. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, (8th Cir. 1986) (federal court has diversity jurisdiction only if courts of state in which federal court sits can entertain suit). And so, lacking a certificate of authority, Prospect Funding may lack capacity under Nebraska law to bring its claims in Nebraska. *See Woods*, 337 U.S. at 536-38.

But it is an open question whether Prospect Funding is "transacting business in this state": that term, as relevant, does *not* include "maintaining, defending, or settling an action or proceeding;" "creating or acquiring indebtedness, mortgages, or security interests in real or personal property;" "conducting an isolated transaction that is completed within thirty days and is not in the course of similar transactions;" or "transacting business in interstate commerce." § 21-157(a). From the record, the Court cannot determine whether Prospect Funding must obtain a certificate of authority to transact business in this state in order to maintain this action.[9]

In sum, the Court agrees that there are issues presented in this case that require discovery, but that discovery will be limited to evidence relevant to those issues: (a) whether the defendants were given proper notice of the arbitration proceedings, (b) whether the defendants were given proper notice

---

[9] The registration requirement of the Nonrecourse Civil Litigation Act, § 25-3307, may also be implicated at some point, but that would go to the enforceability of the Agreement and the arbitration awards, not Prospect Funding's capacity to maintain the action.

of the arbitration awards, (c) whether the Agreement can be enforced against RJP, and (d) whether Prospect Funding is "transacting business in this state" within the meaning of the Nebraska Uniform Limited Liability Company Act. Any good-faith disputes about whether requested discovery is properly relevant to those issues can be presented to the Magistrate Judge, pursuant to the Federal Rules of Civil Procedure, this Court's local rules, and Judge Nelson's civil case management practices.

## DUAL REPRESENTATION

Finally, the Court notes that RJP and Palagi continue to represent both RJP and Stubblefield, and there are some uncertainties about that arrangement that it is prudent to point out to the parties. Most obviously, it is hard to imagine how discovery in this case can proceed without Palagi himself becoming a witness in some capacity. In fact, he's *already* a witness to some extent—he has filed two affidavits in which he avers to the adjudicative facts of this case. Filing 11-1; filing 22 at 14-17. And Palagi's testimony will only become more necessary on issues of notice and contract formation. That will certainly present practical problems, and could potentially present ethical ones as well. *See* Neb. Ct. R. of Prof. Cond. § 3-503.7(a); *see also Beller v. Crow*, 742 N.W.2d 230, 234-36 (Neb. 2007); *see generally Turner v. AIG Domestic Claims, Inc.*, 823 F. Supp. 2d 899, 905-10 (D. Neb. 2011).

There may also be a lurking conflict of interest: because RJP has defenses that Stubblefield does not, there is a potential for RJP's interests and Stubblefield's to diverge.[10] That's a problem even when one law firm

---

[10] Although the Prospect Funding's complaint elides this point, see filing 1 at 5, the Court assumes that Prospect Funding is limited to one recovery on this claim: that is, that it

- 17 -

represents two defendants with conflicting interests. *See* Neb. Ct. R. of Prof. Cond. § 3-501.7(a) & cmt. n.23; *see also Hawkes v. Lewis*, 586 N.W.2d 430, 455 (Neb. 1998), *overruled on other grounds by Heckman v. Marchio*, 894 N.W.2d 296, 303 (Neb. 2017); *Wendell's, Inc. v. Malmkar*, 405 N.W.2d 562, 565-66 (Neb. 1987). It's only a greater problem if the law firm is itself one of the conflicting defendants. *See* § 3-501.7 cmt. n.29 ("because the lawyer is required to be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained"); *cf.* cmt. n.10.

The Court is not acting on these concerns right now, but will be mindful of them. At this point, the Court only asks that counsel remain mindful of them as well, and asks Palagi to carefully consider at every juncture whether representing both defendants is practical and appropriate.[11] Meanwhile,

IT IS ORDERED:

1. The defendants' surreply brief (filing 30) is stricken.

2. The defendants' motion to delay ruling pending discovery (filing 21) is granted.

3. The defendants' motion to dismiss (filing 29) is denied.

---

cannot collect *both* arbitration awards in full from both defendants for a single underlying breach of contract. And that would mean joint and several liability.

[11] If RJP is no longer able to represent Stubblefield, and Stubblefield is unable to retain other counsel, the Court would at least consider appointing counsel pursuant to NEGenR 1.7(g) and this this district's Amended Federal Practice Fund Plan and the Federal Practice Committee Plan (as adopted June 17, 2016).

4. On or before June 22, 2019, the parties shall confer and contact the Magistrate Judge's chambers to set a case planning conference for purposes of establishing a progression schedule, to include deadlines for the parties to complete discovery and reassert their claims through cross-motions for summary judgment meeting the requirements of Fed. R. Civ. P. 56 and NECivR 56.1.

5. Discovery shall be limited to:

   a. whether the defendants were given proper notice of the arbitration proceedings,
   b. whether the defendants were given proper notice of the arbitration awards,
   c. whether the Sale and Repurchase Agreement can be enforced against Ronald J. Palagi, P.C., L.L.C., and
   d. whether Prospect Funding is "transacting business in this state" within the meaning of the Nebraska Uniform Limited Liability Company Act;

   unless additional discovery is, for good cause shown, authorized by the undersigned or the Magistrate Judge.

Dated this 8th day of June, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge